UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ROSEANN L. GRANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 1:08-CV-197 |
| v. | ) |
| | ) *Edgar / Lee* |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This action was instituted by the Plaintiff pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the Plaintiff supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's motion for judgment on the pleadings [Doc. 13] and Defendant's motion for summary judgment [Doc. 18].

For the reasons stated herein, I **RECOMMEND** that: (1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **GRANTED**; (2) Defendant's motion for summary judgment [Doc. 18] be **DENIED**; (3) the decision of Commissioner be **REVERSED**; and (4) this action be **REMANDED** for further administrative consideration under sentence six of 42 U.S.C. § 405(g).

### Administrative Proceedings

Plaintiff filed an application for SSI on August 19, 2005, alleging she became disabled on July 1, 2005 (Tr. 62-68). After Plaintiff's application was denied initially and on reconsideration (Tr. 38-43, 46-48), she requested a hearing before an administrative law judge ("ALJ") (Tr. 36).

Following a hearing on October 30, 2007 (Tr. 247-63), the ALJ issued a decision on November 16, 2007, finding that Plaintiff was not entitled to SSI (Tr. 10-23). The decision of the ALJ became the final decision of the Commissioner on June 26, 2008, when the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 4-6).

## Standard of Review

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were unsupported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The Court may consider any evidence in the record, regardless of whether it has been cited

by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted).

## How Disability Benefits Are Determined

The Sixth Circuit recently reiterated the five-step procedure used by the Social Security Administration ("SSA") to determine eligibility for disability benefits as follows:

> The [Social Security] Act entitles to benefits payments certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). Such claimants qualify as "disabled." *Id.* A claimant qualifies as disabled if she cannot, in light of her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To identify claimants who satisfy this definition of disability, the SSA uses a five-step "sequential evaluation process." 20 C.F.R § 404.1520(a)(4). The five steps are as follows:
>
> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. *Id.* § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months proceed to step three.
>
> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley,* 493

3

U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.

In the fourth step, the SSA evaluates claimants' "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id.;* § 404.1560(c)(1). The SSA bears the burden of proof at step five. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003).

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).

### **ALJ's Findings**

The ALJ made the following findings in support of Commissioner's decision, which are conclusive if they are supported by substantial evidence in the record:

1. The claimant has not engaged in substantial gainful activity since August 19, 2005, the date of the supplemental security income application . . . .

2. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD), osteoarthritis, and a learning disability . . . .

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .

4

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform simple, routine, repetitive, one-and-two step, unskilled, light work with additional mental limitations of no arithmetic use, including cash register operation, and no production quotas.

5. The claimant is unable to perform any past relevant work . . . .

6. The claimant was born [in] 1982, and was 23 years old, which is defined as a younger individual age 18-49, on the date the application was filed . . . .

7. The claimant has at least a high school education in special education and is able to communicate in English . . . .

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled . . . .

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform . . . .

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 19, 2005, the date the application was filed . . . .

(Tr. 15, 18-19, 21-22).

## **Issues**

The issue presented by Plaintiff is:

> Whether the additional evidence submitted by the Plaintiff to the Appeals Council after the decision of the ALJ, is new, material and not previously submitted for good cause, therefore, warranting a remand of this matter for further administrative consideration pursuant to sentence six of 42 U.S.C. § 405(g).

[Doc. 14 at 7-11].

**Review of Evidence**

*Plaintiff's Age, Education, and Past Work Experience*

Plaintiff was 25 years of age at the time of the ALJ's decision (Tr. 249). She completed high school in special education classes and has past relevant work experience as a fast food worker (Tr. 249-51).

*Medical Evidence*

Only the most pertinent information will be briefly mentioned herein as it is not necessary to summarize all of the medical evidence, most of which is not in dispute. Whether or not the medical evidence is summarized herein, however, all of the relevant medical evidence has been reviewed and considered in reaching the recommendation set forth in this report and recommendation.

Carol Phillips, Ed. D., performed a consulting psychological assessment of Plaintiff on December 15, 2005, for the Tennessee Disability Determination Section (Tr. 145, 147-49). Based upon a clinical interview, mental status examination and clinical testing, including the Wechsler Adult Intelligence Scale III, the Wechsler Memory Scale III, and the Wide Range Achievement Test III, Dr. Phillips diagnosed borderline intellectual functioning (Tr. 148). Dr. Phillips noted Plaintiff's language skills were commensurate with her reported social and educational history (Tr. 145). Plaintiff complained of memory problems and a history of special education classes and being learning disabled (Tr. 147). Plaintiff "talked extensively of her lack of skills in reading and arithmetic." (*Id.*). Dr. Phillips indicated that on the Wechsler Adult Intelligence Scale III, Plaintiff's full scale score of 65 was considered to be invalid and an underestimate of Plaintiff's true abilities due to Plaintiff's poor cooperation and her obvious attempts at malingering (*id.*). Dr. Phillips noted

6

that on the Wide Range Achievement Test Plaintiff "gained scores in spelling at the first grade level, at the second grade level in arithmetic and at the third grade level in reading." (*Id.*). Dr. Phillips described Plaintiff as alert and cooperative and oriented for time, place, person and situation (Tr. 148). Dr. Phillips stated, however, that Plaintiff "appeared to feign difficulties with questions and tasks" and did not "address the testing . . . in a valid manner." (*Id.*). Based upon Plaintiff's general behavior and language, Dr. Phillips estimated Plaintiff's intellectual functioning to be in the borderline to low average range (*id.*). Dr. Phillips opined that Plaintiff's: (1) ability to understand and recall simple work functions is not impaired; (2) ability to concentrate and be persistent for work tasks is mildly impaired; (3) ability to adapt to changes and requirements in routine or work settings is mildly impaired; and (4) social interactive patterns are not impaired (*id.*).

*Hearing Testimony*

It is not necessary to summarize all of the hearing testimony, however, all of the testimony has been reviewed and considered in reaching the recommendation set forth herein.

### A. *The Medical Expert*

Dr. Richard Hark, the medical expert ("ME") called as a witness by the ALJ, testified as follows: The ME found Plaintiff did not meet or equal any of the listed impairments (Tr. 252). Agreeing with Dr. Phillips' finding that the December 2005 Intelligence Quotient ("IQ") testing of Plaintiff was invalid because Plaintiff malingered during the testing, the ME stated Plaintiff "faked bad, that is she tried to get low scores and Dr. Phillips identifie[d] many examples of her faking bad." (*Id.*). The ME also found that many of Plaintiff's answers during Dr. Phillips' December 2005 evaluation would be characteristic of someone who had an IQ in the high 40s or low 50s, but that Plaintiff's IQ had not previously been evaluated and there were no other IQ scores to compare with

7

Dr. Phillips' results (Tr. 253). The ME opined that some of Plaintiff's responses to Dr. Phillips' questions during her evaluation were characteristic of someone who had a much more impaired IQ than that opined by Dr. Phillips (*id.*). The ME stated that Dr. Phillips concluded Plaintiff had a borderline or low average IQ and that he agreed with Dr. Phillips's conclusion that Plaintiff did not try hard during Dr. Phillips' evaluation (Tr. 254). The ME stated Dr. Phillips' IQ test results were depressed as the result of Plaintiff's faking bad (*id.*). The ME further stated that "[f]rom a mental residual functional capacity . . . based on the overall evaluation [Plaintiff] should be able to perform very simple, routine and repetitive work." (*Id.*).

The ME opined Plaintiff would have to work at jobs that paid an hourly wage, could not perform jobs requiring a clerical or arithmetical skills such as operating a cash register, and would not be able to read an inventory list or meet a production quota (*id.*). The ME further testified that although the scores Dr. Phillips obtained from her IQ testing of Plaintiff were not valid, based upon Dr. Phillips' estimate that Plaintiff functioned in the borderline to low average range, he had enough information to "assume" Plaintiff functioned in the borderline range (Tr. 255).

### B.   *Plaintiff*

Plaintiff testified as follows: Plaintiff gave full and accurate answers during Dr. Phillips' evaluation (Tr. 256). She did not understand Dr. Phillips' instructions "really good," but she tried her best to read as she "can read some." (*Id.*). Plaintiff can do "a little bit of add and subtract," but not multiplication. (*Id.*). The reason she was fired from her jobs as a fast food worker was she was unable to count money unless someone else did it in front of her and she was able to do it from memory (Tr. 257). Plaintiff does not do her own grocery shopping, she goes shopping only if her husband goes with her (Tr. 258). Plaintiff does not have a driver's license and has never driven a

8

car (Tr. 259).

*Evidence Submitted After The Hearing and ALJ's Decision*

Subsequent to the hearing and the ALJ's decision, Plaintiff submitted records from the Rhea County (Tennessee) Department of Education to the Appeals Council (Tr. 225-43). Eleventh grade records from the Rhea County High School indicate Plaintiff met the state criteria to be identified as mentally retarded (Tr. 225). The records also contain a psychological evaluation of the then thirteen-year-old Plaintiff, dated December 15, 1995, conducted by Thomas Ford, Ph. D. and Todd W. Wiggins, M.A. (Tr. 240-43). Based upon a clinical interview, the Wechsler Intelligence Scale For Children III ("WISC"), the Wechsler Individual Achievement Test ("WIAT"), the Bender Gestalt test, and the House-Tree-Person test, Dr. Ford's/Mr.Wiggins' diagnostic impression was: (1) adjustment disorder with depressed mood and (2) mild mental retardation (Tr. 241). They stated Plaintiff's scores on the WISC indicated her intellectual functioning was in the mentally deficient range (*id.*). The results on the WISC showed Plaintiff had a verbal IQ of 62, a performance IQ of 48, and a full scale IQ of 51 (Tr. 243). Dr. Ford/Mr. Wiggins also indicated Plaintiff was cooperative throughout their assessment and put forth effort on all tests, but gave up on most tests after missing one or two items (Tr. 240).

## Analysis

Plaintiff requests a remand pursuant to sentence six of 42 U.S.C. § 405(g) on the ground she has presented new and material evidence – the records from the Rhea County Board of Education – which, for good cause, were unavailable before the ALJ reached his decision. Plaintiff asserts she attempted to obtain these records from the Rhea County High School, where she attended special education classes, because she is indigent and could not afford additional IQ testing. Plaintiff sets

9

forth the initially unsuccessful steps taken to locate her records, her counsel's advice to the ALJ of the further efforts underway to obtain her records, and how the records were finally obtained.

The Commissioner opposes Plaintiff's request for a remand pursuant to sentence six of 42 U.S.C. § 405(g) only on the ground that Plaintiff has failed to show the evidence is material.[1] The Commissioner asserts the additional evidence submitted by Plaintiff, especially the results of the school psychological evaluation/intelligence testing, is not material because it does not support a finding that the ALJ probably would have decided the case differently if the evidence were before him.

When an ALJ renders the final decision of the Commissioner, as here, additional evidence presented after the ALJ's decision should be considered only for purposes of a remand pursuant to the sixth sentence of 42 U.S.C. § 405(g). *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992). A district court may remand a case for consideration of additional evidence only if the evidence is material. 42 U.S.C.§ 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Additional evidence is material only if the claimant can demonstrate there is a "reasonable probability" the ALJ would have reached a different conclusion on the issues of disability if he had been presented with the additional evidence. *See Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). *See also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) ("Material evidence is evidence that would likely change the Commissioner's decision."). The moving party has the burden to show remand is appropriate. *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986);

---

[1] The Commissioner has not asserted that the additional evidence is not "new" or that the Plaintiff has failed to show "good cause" for her failure to present this evidence earlier. The sole issue to be resolved is whether Plaintiff has satisfied her burden of showing the evidence is material.

*Foster*, 279 F.3d at 357.

In his testimony, the ME agreed with Dr. Phillips that Plaintiff was malingering and "faking bad," and, as a consequence, Dr. Phillips' IQ scores underrepresented the level of Plaintiff's intellectual functioning. The ME testified that many of the Plaintiff's answers during Dr. Phillips' evaluation were, or would be, characteristic of someone who had an IQ in the high 40s or low 50s. The ME indicated Plaintiff's IQ had not been previously evaluated and, therefore, there were no other IQ scores to compare with the results of Dr. Phillips' testing.

The additional evidence submitted by Plaintiff shows she did undergo another, earlier evaluation of her IQ and the results of that testing indicate Plaintiff had a performance IQ of 48 and a full scale IQ of 51. These scores appear to be in the range the ME stated was indicated by Plaintiff's questions to Dr. Phillips during her testing of Plaintiff. This strongly suggests that if the ME had been provided with the results of the earlier testing, then he may have disagreed that Plaintiff was malingering and he may have concluded Plaintiff's IQ was consistent with the results of the earlier testing by Dr. Ford/Mr. Wiggins. If the earlier IQ test results had been available to the ME, the ME would not have had to "assume" Dr. Phillips' assessment that Plaintiff's intellectual functioning was in the low average to borderline range was correct. If the ALJ or ME concluded Dr. Ford's/Mr. Wiggins' IQ test results were valid, then the ALJ would have had a basis for finding Plaintiff's intellectual functioning was below the low average to borderline range indicated in Dr. Phillips' assessment. Based upon the conflict between the IQ test results obtained by Dr. Ford/Mr. Wiggins and by Dr. Phillips and the testimony that certain test results were invalid, the ALJ also may have concluded further evaluation of the Plaintiff was necessary for a determination as to Plaintiff's SSI claim.

The Commissioner asserts the testing performed by Dr. Ford/Mr. Wiggins is not "material" because Plaintiff gave up on most tests after missing one or two items. Even so, Dr. Ford/Mr. Wiggins did not report that the results of the IQ testing were invalid. Instead, they found Plaintiff, who was 13 at the time, appeared to put forth "an effort" on all tasks requested of her . . ." (Tr. 240). In addition, the ME commented about the lack of other IQ testing to compare with Dr. Phillips' results. The ME also commented that some of Plaintiff's responses during Dr. Phillips' testing were indicative of an IQ lower than the IQ determined by Dr. Phillips. On remand, the ALJ would be able to obtain the testimony of the ME – or another medical expert – who could address the Commissioner's concerns about the validity of the test results obtained by Dr. Ford/Mr. Wiggins, including a review of all the evidence and a comparison of all of the IQ test results. The ALJ was never given the opportunity to consider the validity of the tests since the test results obtained by Dr. Ford/Mr. Wiggins were not before him. Under the present circumstances, a decision about the validity of the test scores obtained by Dr. Ford/Mr. Wiggins is for the ALJ to consider in the first instance, not for this Court.

There is at least a reasonable probability the ALJ may have reached a different conclusion on the issue of Plaintiff's disability if he had been presented with the additional evidence submitted by the Plaintiff. Therefore, the evidence submitted by the Plaintiff is "material" and warrants a remand for further administrative consideration pursuant to 42 U.S.C. § 405(g). Accordingly, I **CONCLUDE** a remand for further administrative consideration pursuant to sentence six of 42 U.S.C. § 405(g) is proper.

## Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions and for the reasons stated above, I **RECOMMEND**:[2]

(1) Plaintiff's motion for judgement on the pleadings [Doc. 13] be **GRANTED**;

(2) Defendant's motion for summary judgment [Doc. 18] be **DENIED**;

(3) Judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure **REVERSING** the Commissioner's decision which denied benefits to the Plaintiff; and

(4) This matter be **REMANDED** to the Commissioner for further administrative consideration pursuant to sentence six of 42 U.S.C. § 405(g).

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).